**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CASE NO. 1:20-cv-00356-MR**

| | |
|---|---|
| **BRODIE HAMILTON,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | <u>**MEMORANDUM OF**</u> |
| **vs.** ) | <u>**DECISION AND ORDER**</u> |
| ) | |
| ) | |
| **TODD ISHEE, Secretary, North** ) | |
| **Carolina Department of Adult** ) | |
| **Correction,** ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on the Motion for Summary

Judgment filed by the Respondent on May 19, 2023. [Doc. 10].

I.     **PROCEDURAL BACKGROUND**

Brodie Hamilton (the "Petitioner") is a prisoner of the State of North

Carolina. The Petitioner was convicted on January 23, 2017 in Macon

County, North Carolina for multiple counts of trafficking in methamphetamine

and one count of conspiracy to traffic in methamphetamine. [Doc. 1 at 2].

The Petitioner received consecutive sentences of 225 to 282 months'

imprisonment. [Id.].

The Petitioner filed a direct appeal on grounds that he was prejudiced by the prosecution's failure to disclose a blank audio recording in discovery, that the trial court erred in denying his motion for sanctions and motion for dismissal of the charges based on the discovery violation, and that the trial court erred by failing to provide a special jury instruction on spoliation of evidence. State v. Hamilton, 262 N.C. App. 650, 822 S.E.2d 548 (N.C. Ct. App. December 4, 2018). The North Carolina Court of Appeals issued its opinion on December 4, 2018 finding no error and upholding the Petitioner's convictions. [Id.]. The Petitioner filed a petition for discretionary review in the North Carolina Supreme Court, which was denied on August 14, 2019. [Doc. 1 at 3; Doc. 11-9].

The Petitioner filed a post-conviction Motion for Appropriate Relief ("MAR") in the Macon County Superior Court on December 1, 2020, on grounds that the prosecution failed to preserve and turn over potentially exculpatory evidence, that the trial court abused its discretion by denying the Petitioner's motion for dismissal and motion for sanctions, ineffective assistance of counsel, and that the trial court erred by failing to give a spoliation instruction. [Doc. 11-10]. The trial court denied the MAR on December 3, 2020. [Doc. 11-11]. The Petitioner did not seek certiorari review of the MAR denial. [Doc. 1 at 2-3; Doc. 11 at 10].

2

The Petitioner filed his § 2254 petition in this Court on November 30, 2020.  [Doc. 1].  The Court entered an Order on January 17, 2023 directing the Respondent to respond to the § 2254 petition.  [Doc. 6].  The Respondent filed its Motion for Summary Judgment on May 19, 2023, moving this Court to grant summary judgment and deny the § 2254 petition.  [Doc. 10].  In support, the Respondent submitted a brief along with exhibits from the Petitioner's state court proceedings.  [Doc. 11].

The Court issued an Order on May 24, 2023 advising the Petitioner of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 12].  To date, the Petitioner has filed no response and has submitted no summary evidence.[1]  The Respondent's Motion for Summary Judgment is now ripe for review.

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is

---

[1] The Court also notes that the § 2254 petition is not sworn under penalty of perjury, and therefore, the allegations contained in the petition do not constitute summary judgment evidence.  See 28 U.S.C. § 1746 (permitting unsworn declaration to substitute for a conventional affidavit if the statement contained therein is made under penalty of perjury and verified as true and correct).

3

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)(citing Fed. R. Civ. P. 56). The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine issue for trial. <u>Id.</u> at 323-324. The nonmoving party must oppose a summary judgment motion by going beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u> (citing Fed. R. Civ. P. 56). The nonmoving party "may not rest upon the mere allegations or denials of his pleading" to defeat a motion for summary judgment. <u>Id.</u> at 322, n.3.

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary

judgment motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Id. at 599. A court is bound to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322.

In reviewing the Respondent's Motion for Summary Judgment, the Court must also consider the requirements governing petitions for habeas corpus as set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). The AEDPA applies to "a person in custody under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States." Rule 1(a)(1), 28 U.S.C. foll. § 2254. Under the AEDPA, federal courts may not grant relief on a habeas claim that has been adjudicated on the merits in a state court proceeding unless the state court's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" § 2254(d)(1), or "was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2).

A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when the state court correctly identifies the "governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014)(citation omitted). In making this assessment, the Court looks "to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Id. at 238-39 (citation omitted).

For a state court's factual determination to be held unreasonable under § 2254(d)(2), "[the determination] must be more than merely incorrect or erroneous." Williams v. Stirling, 914 F.3d 302, 312 (4th Cir. 2019)(citation omitted). The state court's finding must be "sufficiently against the weight of the evidence that it is objectively unreasonable." Id. (citation omitted). The AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct" absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1).

6

## III. FACTUAL BACKGROUND

As set forth by the North Carolina Court of Appeals in its opinion on direct appeal, the following is a summary of the underlying facts surrounding the Petitioner's convictions:

> The Macon County Sheriff's Department received a tip involving drug transportation along a known methamphetamine trafficking route between Atlanta, Georgia and Macon County, North Carolina. The information included specific details about the individuals involved and the vehicle that would be used. Under the direction of Lieutenant Charles Moody ("Lt. Moody"), the department sought to intercept the vehicle by monitoring the back roads of Macon County between the pick-up and drop-off locations.
>
> On June 19, 2015, Jeremy Stanley ("Stanley") and Elizabeth Tice ("Tice") were stopped in Macon County after failing to stop at a stop sign. Stanley told deputies that there was a gun in the vehicle, and a trace of its serial number showed the firearm had been stolen. Both Stanley and Tice were arrested for possession of a stolen firearm. Stanley told deputies he wanted to talk and had additional information about the stolen firearm.
>
> Deputies brought in a K9 unit to conduct a "free air" sniff around the vehicle. The K9 unit alerted on the vehicle, and deputies located more than two pounds of methamphetamine in a plastic container behind the driver's seat.
>
> Stanley and Tice were then transported to the Macon County Sheriff's Department. Stanley told Lt. Moody that [the Petitioner] paid them $17,000.00 to pick up the methamphetamine in Atlanta. Lt. Moody asked Stanley and Tice if they could help prove [the Petitioner] was involved by setting up a controlled delivery of artificial methamphetamine. Stanley used Tice's cell phone to call [the Petitioner], told him that they had problems with their vehicle, and arranged for someone to pick up the drugs at the Smokey Mountain

7

Welcome Center. Lt. Moody testified that he "could hear that there was a person on the other end of the line, but [he] couldn't hear what was being said" by that person.

[The Petitioner] was not present at the site of the drug exchange, but instead, the exchange was carried out by two of [the Petitioner]'s associates. Both associates were arrested on site.

On December 14, 2015, the Macon County Grand Jury indicted [the Petitioner] for trafficking in methamphetamine by possession, trafficking in methamphetamine by transportation, and conspiracy to traffic methamphetamine. During [the Petitioner]'s January 2017 trial, defense counsel asked Lt. Moody on cross-examination if he had attempted to record the telephone conversations between Stanley and [the Petitioner]. Lt. Moody responded:

> I tried to record the telephone call. I don't normally do that. I had a brand-new tape recorder that had just been purchased. I just used that and a microphone and a suction cup to try to record that call ... and made that attempt. It wasn't until sometime later that I realized that there's no— there's no real conversation that was captured during that recording.

Defense counsel then informed the trial court that he was unaware of Lt. Moody's attempt to preserve the conversation by audio recording as no such information had been provided in discovery. Defense counsel was permitted to question Lt. Moody outside the presence of the jury:

> [Defense Counsel:] So what was actually recorded in that?
>
> [Lt. Moody:] Nothing.
>
> [Defense Counsel:] Absolutely nothing?

[Lt. Moody:] Nothing. An occasional noise, but you couldn't even make out the words. I didn't do a very good job of the installation. I was not familiar with the equipment or with that particular phone.

...

[Defense Counsel:] So you recorded how many phone calls with this device?

[Lt. Moody:] One.

[Defense Counsel:] Which one was that?

[Lt. Moody:] It would have been the first call. And quite honestly, I don't recall if I attempted to record the second one or not. I didn't make any attempt to listen to the recording until a couple of days after that, and there was just nothing there.

[Defense Counsel:] Do we still have the audiotape?

[Lt. Moody:] I don't think so.

THE COURT: What happened to it? I mean, is it a physical tape? Is it digital information?

[Lt. Moody:] It would be a digital tape. ... A digital— a digital device.

THE COURT: Do you still have that device?

[Lt. Moody:] I don't know, Your Honor. I listened to it—or attempted to listen to the recording several times. There was no recording there. I had other— at least one other officer confirm that there wasn't anything there as well. I don't know if I didn't turn it on, if—if I used—if I placed the microphone on it inappropriately. There was no recording there....

9

> There was no—there was no audible information on the recording.
>
> On January 25, 2017, [the Petitioner] filed a motion for sanctions seeking dismissal of the charges for what he contended was a willful violation of North Carolina's discovery statutes and his constitutional rights. The trial court denied his motion for sanctions.
>
> On January 27, 2017, [the Petitioner] was convicted on all counts...

Hamilton, 262 N.C. App. at 650-654.

## IV.  DISCUSSION

The Petitioner raises the following claims in his § 2254 petition: 1) the prosecution failed to preserve and turn over potentially exculpatory evidence in violation of Brady v. Maryland; 2) the trial court erred by denying the Petitioner's motion to dismiss based on the discovery violation; 3) the trial court erred by denying the Petitioner's request for sanctions based on the discovery violation; 4) ineffective assistance of counsel for failure to investigate potentially exculpatory evidence; 5) ineffective assistance of counsel for failure to request a hearing based on illegal search and seizure; 6) ineffective assistance of appellate counsel; 7) the trial court erred by refusing to give a spoliation instruction; and 8) cumulative effect of errors. [Doc. 1 at 10-42].   The Petitioner seeks immediate release, or in the alternative, a new trial and/or an evidentiary hearing.  [Doc. 1 at 42].

## A. **Brady Violation**

In <u>Brady v. Maryland</u>, the Supreme Court held that the prosecution may not suppress evidence that is favorable to an accused where the evidence is material either to guilt or punishment. <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). To establish a <u>Brady</u> violation, a petitioner must show that (1) the prosecution suppressed the evidence, whether willfully or inadvertently; (2) that the evidence was favorable to the petitioner, whether directly exculpatory or for impeachment value; and (3) that the evidence was material. <u>Spicer v. Roxbury Corr. Inst.</u>, 194 F.3d 547, 555 (4th Cir.1999). Evidence is material if the failure to disclose it "undermines confidence in the outcome of the trial." <u>United States v. Bagley</u>, 473 U.S. 667, 678 (1985). The Petitioner must show there is a "reasonable probability" that the result would have been different had the prosecution disclosed the evidence. <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999).

The Petitioner alleges that the prosecution committed a <u>Brady</u> violation by failing to preserve and turn over the blank audio recording in violation of his due process rights, as the recording was material to the issue of Petitioner's guilt and allegedly connected him to the crimes charged. [Doc. 1 at 10-18]. The Petitioner argues that the recording was "relevant,

admissible, and exculpatory," and would have been admissible for impeachment during the cross-examination of Stanley.  [Id. at 13].

The Petitioner also alleges in his § 2254 petition that he has come into the possession of newly discovered evidence that shows the recording did exist at the time of trial.  [Id. at 15-17].  Specifically, the Petitioner describes an alleged e-mail sent from the National Post Conviction Project (hired to assist the Petitioner with locating files relating to his case) on August 28, 2020 to the attorney for the Petitioner's co-defendant Adam Saunders,[2] requesting information relating to the blank audio recording.  [Id.].  The attorney responded that she approached the Assistant District Attorney in his office about a potential plea deal for her client, and during the conversation he told her that there was a recording of the call and "[h]e went to bring the file up on his computer to play it, but he said he must not actually have it." [Id. at 16].  The Petitioner claims this newly discovered evidence proves that the prosecutor knew the recording existed at the time of trial yet failed to disclose it.  [Id. at 18].

---

[2] The conviction of the Petitioner's co-defendant Adam Saunders arises from the same trafficking operation.  Saunders' § 2254 petition is also pending before this Court.  See W.D.N.C. Case No. 1:20-cv-357-MR.

In its opinion on direct appeal, the North Carolina Court of Appeals held that the Petitioner failed to show that the recording was material, as he "merely demonstrated that the blank audio recording could have been potentially useful." Hamilton, 262 N.C. App. at 655. The appellate court explained that the Petitioner had the opportunity to question Stanley about the phone call with the Petitioner, to cross-examine Lt. Moody about the blank recording, and to argue the significance of the recording to the jury and that the Petitioner did in fact do all of these at trial. [Id.]. The appellate court concluded that the Petitioner's speculative assertions about Lt. Moody, standing alone, were not enough to demonstrate bad faith.[3] [Id.].

The appellate court also noted that the evidence at trial established that the Petitioner orchestrated the procurement of a significant quantity of methamphetamine and that the jury heard testimony regarding his role in financing the operation and obtaining and transporting the methamphetamine. [Id.]. In light of this overwhelming evidence, the Petitioner's speculation about the contents and significance of the blank audio recording did not undermine confidence in the outcome of the trial. [Id.].

_____

[3] When the prosecution's failure to preserve evidence is based on evidence that is only "potentially useful," a showing of bad faith on the prosecution's part is required. Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988).

The majority of the Petitioner's argument in his § 2254 petition is identical to that raised in his initial brief on direct appeal. [See Doc. 11-3 at 15-24]. The Petitioner's allegations are also unsworn and he provides no admissible summary judgment evidence. Although the Petitioner attempts to now raise a claim of newly discovered evidence in support of his Brady claim, the purported correspondence is speculative and is based upon the Petitioner's description with citation to no admissible summary judgment evidence. The alleged correspondence fails to conclusively demonstrate the existence of the recording or provide additional support for the Petitioner's Brady violation claim, especially given that the prosecutor supposedly stated that "he must not actually have it." [Doc 1 at 16]. The co-defendant's attorney also admitted to not having clear recollection and purportedly stated that she had "no idea if [the recording] did exist at any point before [her] conversation with [the prosecutor]." [Id.].

The Petitioner has presented no forecast of evidence to demonstrate that the state court's decision finding no Brady violation was an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented at the Petitioner's trial. As such, the Petitioner's claim is without merit and cannot withstand summary judgment.

**B.** **Denial of Motion to Dismiss/Motion for Sanctions**

In grounds two and three, the Petitioner argues that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights when it abused its discretion by denying his motion for dismissal of the charges and denying his motion for sanctions based on the prosecution's <u>Brady</u> violation. [Doc. 1 at 18-29].

Respondent argues that these claims are barred by procedural default because the Petitioner did not exhaust these claims by raising his Fifth, Sixth, and Fourteenth Amendment arguments on direct appeal. [Doc. 11 at 17]. Under the AEDPA, a petitioner must exhaust his available state remedies before he may pursue habeas relief in federal court. 28 U.S.C. § 2254(b)(1)(A). Exhaustion requires the prisoner to present the federal claim in state court in order to give the state the opportunity to review and correct alleged violations of the prisoner's federal rights. <u>Duncan v. Henry</u>, 513 U.S. 364, 365-366 (1995). The state court must be "alerted to the fact that the prisoners are asserting claims under the United States constitution." <u>Id.</u>

In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement "in two ways": (1) by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina

Supreme Court for discretionary review; or (2) by filing a state post-conviction proceeding and petitioning the North Carolina Court of Appeals for a writ of certiorari. Joyner v. Hooks, 2019 WL 3561429, *3 (E.D.N.C. 2019); N.C. Gen.Stat. § 7A–31; N.C. Gen.Stat. § 15A–1422. See also McNeil v. Whitener, 2012 WL 4086510, *5 (E.D.N.C. 2012)(to satisfy the exhaustion requirement, a petitioner must show that "his instant federal claims followed along one of these two tracks to completion of review in the state courts").

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). A petitioner is barred by procedural default if he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " Id. (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). A federal habeas court will not review a procedurally defaulted claim unless the petitioner shows either (1) "cause" and "actual prejudice" resulting from the errors complained of, or (2) that a "miscarriage of justice" would result from refusal to entertain the collateral attack. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999)(citing United States v. Frady, 456 U.S. 152, 167-68, 102 S.Ct.

1584, 71 L.Ed.2d 816 (1982)); Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998)(citing Coleman v. Thompson, 501 U.S. at 731-732).[4]

Although the Petitioner filed a direct appeal challenging the trial court's denial of his motion to dismiss charges and motion for sanctions, he did not raise his Fifth, Sixth, and Fourteenth Amendment arguments in the appeal. [See Doc. 11-3 at 15-30].  While it does appear that the Petitioner raised these claims in his post-conviction MAR, he did not seek certiorari review of the trial court's denial of the MAR as required for exhaustion of state remedies.  [See Doc. 11-10 at 19-30].  The trial court denied the MAR on December 3, 2020.  [Doc. 11-11].  Given the amount of time that has passed, any attempt by the Petitioner to now seek certiorari review of the MAR denial would likely be dismissed due to unreasonable delay.  See N.C. R. App. P. 21(e).  As such, the Petitioner failed to exhaust these claims and they are now barred by procedural default.  The Petitioner makes no showing of

---

[4] "Cause" exists "where a constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).  "Actual prejudice" is shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a "possibility of prejudice." Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).  To show that a "miscarriage of justice" would result from the court's failure to entertain the collateral attack, the movant must show "actual innocence by clear and convincing evidence." United States v. Mikalajunas, 186 F.3d at 493.

cause and actual prejudice or a fundamental miscarriage of justice to excuse the procedural default.

Even if these claims were not barred by procedural default, they would fail on the merits. As set forth in subsection A, *supra*, the state court properly held that the prosecution did not commit a <u>Brady</u> violation. Because the Petitioner has failed to demonstrate any discovery violation, he can present no forecast of evidence to establish that the trial court erred in denying his motion to dismiss the charges and request for sanctions. In upholding the trial court's ruling on these motions, the appellate court noted that the trial court considered the materiality of the blank audio recording and circumstances surrounding Lt. Moody's failure to provide the file to the prosecution, as well as evaluated Lt. Moody's testimony in light of his law enforcement experience, concluding that his explanation about the events surrounding the recording was credible. <u>Hamilton</u>, 262 N.C. App. at 656-659.

The Petitioner presents no forecast of evidence to demonstrate that the trial court's denial of these motions was an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented at trial. As such, the Petitioner's claim is without merit and cannot withstand summary judgment.

## C.    Ineffective Assistance of Counsel

The right to counsel guaranteed by the Sixth Amendment includes the "right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984)(quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)). To successfully challenge a conviction based on ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in Strickland, which requires the petitioner show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 688, 692.

In grounds four, five, and six, the Petitioner alleges that trial counsel was ineffective for failure to investigate the potentially exculpatory evidence, failure to request a hearing based on illegal search and seizure, and that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on appeal. [Doc. 1 at 31-38].

Respondent argues that these claims are unexhausted and barred by procedural default. [Doc. 11 at 18-19]. The Petitioner did not raise these claims in his direct appeal. Although the Petitioner did raise these claims in his post-conviction MAR, he did not seek certiorari review of the trial court's denial of the MAR. [See Doc. 11-10 at 30-38]. As such, the Petitioner failed

to exhaust these claims and they are now barred by procedural default. The Petitioner makes no showing of cause and actual prejudice or a fundamental miscarriage of justice to excuse the procedural default.

Even if these claims were not barred by procedural default, they would also fail on the merits. As set forth in subsection A, *supra*, the North Carolina Court of Appeals properly held that the prosecution did not commit a <u>Brady</u> violation. Therefore, the Petitioner can present no forecast of evidence to establish his claims of ineffectiveness. Counsel cannot have been expected to conduct unnecessary investigations or pursue baseless arguments that would not have likely produced a different outcome at trial. As such, the Petitioner's claims are without merit and cannot withstand summary judgment.

### D.  Spoliation Instruction

Generally, issues relating to a trial court's ruling on jury instructions is generally a matter of state law and not cognizable on federal habeas review. <u>Bates v. Lee</u>, 308 F.3d 411, 420 (4th Cir. 2002). <u>See</u> <u>also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Federal habeas relief is not available for state law errors related to jury instructions unless "the ailing instruction by itself so infected the entire trial that the

resulting conviction violates due process." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)(quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)).

In ground seven, the Petitioner argues that the trial court erred in refusing to give his requested instruction on spoliation of evidence. [Doc. 1 at 38-41]. The Petitioner's argument in his § 2254 petition is identical to that raised in his initial brief on direct appeal. [Doc. 1 at 38-41, Doc. 11-3 at 30-36]. The Petitioner also presents no summary judgment evidence in support of his habeas argument.

In its opinion on direct appeal, the North Carolina Court of Appeals held that the trial court did not err in declining to instruct the jury as to spoliation because the Petitioner failed to establish beyond mere speculation that the blank audio recording contained any exculpatory evidence and failed to establish any bad faith on part of Lt. Moody. <u>Hamilton</u>, 262 N.C. App. at 659-660. As discussed in subsection A, *supra*, the Petitioner has not established any <u>Brady</u> violation on part of the prosecution. He has presented no forecast of evidence to demonstrate that a spoliation instruction was warranted and that the trial court's failure to give such instruction infected the entire trial so as to violate due process and render the trial unfair. As such, this claim is not cognizable on federal habeas review, is without merit, and cannot withstand summary judgment.

### E. Cumulative Effect of Errors

The Petitioner asserts in ground eight that he is entitled to relief due to the cumulative effect of the errors raised in his petition which were prejudicial to his entire trial. [Doc. 1 at 42]. However, as explained above, Petitioner's claims of error are without merit and he is entitled to no relief on his § 2254 petition. If none of a petitioner's claims warrants relief individually, a court will decline to reverse for cumulative error. United States v. Basham, 561 F.3d 302, 330 (4th Cir. 2009). Therefore, this claim is without merit and the Petitioner cannot withstand summary judgment.

## V. CONCLUSION

For the reasons forth above, the claims raised in the § 2254 petition are without merit and the Petitioner is not entitled to an evidentiary hearing or any relief from his petition. Accordingly, the Respondent's Motion for Summary Judgment shall be granted and the § 2254 petition shall be denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003)(noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000)(holding

that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS, THEREFORE, ORDERED** that:

1) The Respondent's Motion for Summary Judgment [Doc. 10] is **GRANTED**;

2) The Petition for Writ of Habeas Corpus [Doc. 1] is **DENIED**;

3) The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

4) The Clerk is directed to terminate this case.

Signed: March 28, 2024

Martin Reidinger
Chief United States District Judge